1

2

3

4

5

6

7                                 **UNITED STATES DISTRICT COURT**

8                                 **EASTERN DISTRICT OF CALIFORNIA**

9

10

11   DARLENE RAQUEL JOHNS,                    )   Case No.: 1:20-cv-00362-BAM
                                              )
12                      Plaintiff,            )   **ORDER REGARDING SOCIAL SECURITY**
                                              )   **COMPLAINT**
13             v.                             )
                                              )
14   KILOLO KIJAKAZI, Acting Commissioner of  )
     Social Security,[1]                      )
15                                            )
                                              )
16                      Defendant.            )
     ─────────────────────────────────────── )
17

18                                     <u>**INTRODUCTION**</u>

19        Plaintiff Darlene Raquel Johns ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner") denying her applications for disability insurance

21   benefits under Title II of the Social Security Act and supplemental security income under Title XVI of

22   the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were

23   submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

24

25

26   ─────────────────────

27   [1]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of
     the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

28   [2]     The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including
     entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 7, 9, 13.)

                                                1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on February 12, 2016, and an application for supplemental security income on January 17, 2016.  AR 212-20, 222-23.[3]  Plaintiff alleged that she became disabled on November 30, 2014, due to an amputated toe on her right foot, neuropathy, diabetes, rheumatoid arthritis, high cholesterol, depression, and vision issues in both eyes.  AR 224, 274-75.  Plaintiff's applications were denied initially and on reconsideration.  AR 136-39, 143-47.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Joan H. Deans held a hearing on November 21, 2028.  AR 37-68.  ALJ Deans issued an order denying benefits on January 30, 2019.  AR 12-30.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  This appeal followed.

### Hearing Testimony

The ALJ held a hearing on November 21, 2018, in Kansas City, Missouri.  Plaintiff appeared at the hearing in California by video conference with her non-attorney representative, Diana Wade.   AR 15, 39.  Jeffrey F. Magrowski, Ph.D., an impartial vocational expert, also appeared and testified.  AR 15.

At the time of the hearing, Plaintiff was 62 years old, with a tenth-grade education and GED.  She completed some bookkeeping in college and attended trade school to become an airline mechanic.  She is retired and her husband has some disability income.  She lives with her husband in a motorhome in her daughter's backyard.  AR 41-42.  She has a driver's license and is able to drive.  AR 43-44.

When asked about her past work, Plaintiff testified that she was a bookkeeper in 2003, and she also worked for a carnival, keeping their records.  In 2004, she worked with In-home Health Services,

---

[3]        References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

taking care of her mother until her mother died in October 2014.  In 2006, Plaintiff worked for Arrow Tax and Bookkeeping, working seasonally for the carnival in the same tax office.  She went from seasonal work to almost full-time work in 2007, working 38 hours per week until 2014.  She also worked for Walmart in 2015 for two or three months but quit because of foot swelling.  AR 45-47. Plaintiff testified that she was unable to work because she has problems with her foot.  It swells up and leaks into her shoes.  She cannot wear one shoe.  She retired on August 18, 2018, and she collects early Social Security retirement.  AR 47-48.

In response to questions from her representative, Plaintiff confirmed that she has one toe that was amputated.  She does not have good balance because of it and has fallen quite a bit.  She has asked her doctor for a walker and a chair for the bathtub.  She understands that they want to amputate another toe because of a bone infection.  She does not have surgery scheduled.  Plaintiff reported that she has pain and numbness in her other foot.  She feels pain when her feet swell up.  She has to put her feet up about three or four times a day when they swell, which will relieve the pain, but not the swelling.  She sometimes has to keep them up for two hours and sometimes all day, depending on the swelling.  When asked what would cause her to elevate her foot all day, Plaintiff testified that she sometimes has to go shopping and it will swell up to her hip, swelling and throbbing after an hour. She is able to shop by driving a cart or leaning on a cart.  AR 48-53, 54.

When asked about her abilities, Plaintiff testified that she could walk about 20 feet before she has to stop.  She can stand about 15 or 20 minutes.  She can lift and carry less than 20 pounds.  She can sit in a chair about an hour or an hour and a half.  AR 53-54

When asked about her medications, Plaintiff testified that she does not take pain medication. She takes a pill for depression and receives mental health treatment.  She also takes Gabapentin to help with the neuropathy.  She has side effects, which have caused her to get lost while driving.  She also takes two diabetic medicines.  She has complications from her diabetes, including a heart valve problem, seeping from her foot, a problem with pooping, bad teeth, infections, and breaking of her foot bone.  She also has bad eyesight.  Sometimes she will go in for irrigation and debridement on both feet.  AR 54-60.

When asked about chores, Plaintiff testified that in the morning she will wash dishes. She also vacuums. AR 60.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE categorized Plaintiff's past work as bookkeeper/receptionist and caregiver. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education and past work as Plaintiff, who could lift and carry 10 pounds maximum occasionally, stand and walk a total of two hours in an eight-hour day, sit for at least six hours, never climb ladders, ropes and scaffolds, occasionally perform all other posturals, including climbing ramps and stairs, stooping, kneeling, crouching, and crawling, and should avoid even moderate exposure to hazards such as heights, moving machinery and open water. The VE testified that such a person could perform Plaintiff's past work as a bookkeeper/receptionist. AR 65-66.

For the second hypothetical, the ALJ asked the VE to add to the first hypothetical that the individual would need to sit at least two hours a day with her legs elevated to chair level. The VE testified that such an individual would not be able to perform the past work of bookkeeper. AR 66-67.

For the third hypothetical, the ALJ asked the VE to consider an individual who needed to elevate her foot more than chair level for two hours in an eight-hour day. The VE testified that the individual would not be able to perform the job of bookkeeper. AR 67.

Following the ALJ's questions, Plaintiff's representative asked the VE to consider the first hypothetical but add that the individual would be absent about four days per month. The VE testified that there would not be competitive employment for this individual. AR 67.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-30. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2014, the alleged onset date. AR 17. The ALJ identified the following severe impairments: diabetes mellitus,

diabetic neuropathy, diabetic retinopathy, diastolic dysfunction, and hammertoes.  AR 18-21.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 21-22.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry a maximum of ten pounds occasionally, sit for at least six hours in an eight-hour workday, stand and walk for a total of two hours in an eight-hour workday, occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, never climb ladders, ropes or scaffolds, and avoid even moderate exposure to hazards such as heights, moving machinery and open water.  AR 22-29.  With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a bookkeeper/receptionist.  AR 29.   The ALJ therefore concluded that Plaintiff was not disabled.  AR 29-30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

///

5

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[4]

Plaintiff contends that the ALJ erred (1) by rejecting the opinion of Physician's Assistant ("PA") Donald Harwick; and (2) by discounting Plaintiff's testimony concerning pain, symptoms, and limitations.

### A.   The ALJ Did Not Err in Evaluating the Opinion Evidence from PA Harwick[5]

Plaintiff first contends that the ALJ failed to articulate germane reasons supported by substantial evidence for rejecting the opinion of PA Harwick. (Doc. 17 at 10.)  The Court disagrees.

On August 30, 2018, PA Harwick completed a Medical Source Statement form.  AR 542-46.  PA Harwick identified Plaintiff's diagnoses as amputation partial right foot, Type II diabetes and neuropathy.  AR 542.  He indicated that Plaintiff's pain or other symptoms were severe enough to interfere with attention and concentration needed to perform even simple work tasks frequently, but Plaintiff was capable of low stress jobs.  AR 543.  PA Harwick opined that Plaintiff could walk up to one city block, sit for 20-30 minutes at one time, and needed to walk every 60 minutes in an 8-hour

---

[4]      The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

[5]      The ALJ identifies Mr. Harwick as "Daniel Hartwick, M.D."  AR 28.  Plaintiff asserts that this may be a scrivener's error.  (Doc. 17 at 9, n. 1.)  As relevant here, the parties do not dispute that Donald Harwick is a Physician's Assistant or PA and not an acceptable medical source based on the date of Plaintiff's applications. (Doc. 17 at 9; Doc. 19 at 16; *see also* AR 562 (identifying Plaintiff's primary care physician as "Donald Harwick PA")).

6

working day for 5 minutes.  Plaintiff also would need a job that permitted shifting positions at will and the ability to take unscheduled breaks every two hours for 15 minutes, changing positions.  PA Harwick further opined that Plaintiff must use a cane or other assistive device while standing or walking.  Plaintiff could occasionally lift and carry 10 pounds. AR 543-44.  She frequently could twist, rarely stoop, crouch/squat or climb stairs, but could never climb ladders.  She did not have significant limitations with reaching, handling, or fingering. AR 545.  PA Harwick estimated that Plaintiff was likely to be absent from work as a result of the impairments or treatment about four days per month.  AR 545.   He opined that Plaintiff could not work 8 hours a day, 5 days a week.  AR 546.

For claims filed before March 27, 2017, such as the one here, physicians' assistants are not classified as an "acceptable medical source." *See* 20 C.F.R. § 404.1502(a)(8) (including licensed physicians' assistants as acceptable medical sources for impairments within their licensed scope of practice "only with respect to claims filed...on or after March 27, 2017"); § 404.1513(d)(1) (effective September 3, 2013 to March 26, 2017) (identifying "other sources" to include nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists); § 416.913(d)(1) (effective September 3, 2013 to March 26, 2017) (identifying "other sources" to include nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).  Instead, physicians' assistants are defined as "other sources" not entitled to the same deference as an "acceptable medical source." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*. Therefore, under the regulations then-applicable to Plaintiff's claims, as a physician's assistant, PA Harwick is not an "acceptable medical source," but rather an "other source." *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (acceptable medical sources are generally limited to physicians and other qualified specialists).  Although required to consider evidence from "other sources," an ALJ may discount testimony from these other sources by providing reasons "germane to each witness for doing so." *See Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *Molina*, 674 F.3d at 1111.

Here, the ALJ assigned PA Harwick's opinion "partial weight" to the extent consistent with the RFC.  AR 29.  The ALJ found that the degree of limitations that PA Harwick assessed were "inconsistent with the claimant's only mild objective findings on physical examinations."  *Id.*  The

ALJ properly may reject the competent testimony of "other medical sources" if it is inconsistent with evidence in the record or if it is contradicted by another medical specialist. *Dale*, 823 F.3d at 944–45; *Molina*, 674 F.3d at 1111; *see also Bourcier v. Saul*, 856 Fed.App'x 687, 690 (9th Cir. 2021) (concluding ALJ provided germane reason for discounting other source opinion that was not supported by the treatment record); *Shorter v. Saul*, 777 Fed.App'x 209, 211 (9th Cir. 2019) (finding ALJ properly rejected other source opinion of nurse practitioner based on inconsistency with objective medical evidence, including treatment notes showing largely unremarkable examinations and findings of improvement with medication).

The Court finds substantial evidence supports the ALJ's determination that PA Harwick's assessed limitations were inconsistent with Plaintiff's generally mild physical examinations.  In so determining, the ALJ summarized Plaintiff's treatment records.  AR 24-25.  As noted by the ALJ, on December 23, 2014, Plaintiff sought emergency treatment for a swollen leg after amputation of her great right toe in November 2014.  Plaintiff rated her pain at 4/10 and examination of her lower extremities revealed no abnormalities.  AR 24, 435-36.  Sonographic images of her right lower extremity showed no evidence for deep venous thrombosis.  AR 441.  An x-ray of her right foot showed her great toe amputation with soft tissue swelling but was otherwise unremarkable.  AR 442.

In 2015, the record is devoid of treatment for her impairments with the exception of a single vision examination.  AR 24, 448.

In March 2016, a physical examination noted Plaintiff's extremities appeared normal with no significant pedal edema and no motor or sensory deficits.  AR 24, 484. An April 26, 2016 CT of her right foot showed no fracture or dislocation and mild well-defined erosive changes involving the distal second and third metatarsal heads with osteophyte formation.  AR 487.  A CT of her left foot showed no bony lytic lesion to suggest osteomyelitis.  She had infiltrative changes involving the plantar aspect of the foot, and thickening of the plantar fascia, suggestive of plantar fasciitis.  AR 488.

In November 2016, Plaintiff reported no physical impairments and that she could still walk and work even after having her toe removed due to diabetes.  AR 24, 519.

On January 17, 2017, a physical examination showed neuro absent to the entire foot, tenderness over the metatarsal shafts two and three with swelling, mild to moderate right forefoot

dorsally, and tenderness over the second and third metatarsal left foot, no swelling.  She had some generalized nonpitting edema to the legs and ankle, but the remaining exam of the lower extremities was unremarkable.  She was sent for nail debridement.  AR 24, 505.  Subsequently, on January 18, 2017, a physical examination revealed normal gait, ability to exercise and only mild, bilateral lower extremity edema.  AR 573.

On February 13, 2017, Plaintiff had swelling and discoloration of the second and third metatarsal shafts right foot dorsally, decreased range of motion dorsiflexion of the feet bilaterally and neurologic absent to the feet.  AR 556.  On March 17, 2017, Plaintiff had tenderness over the second and third metatarsal shafts of the right foot, localized swelling over the dorsum of the forefoot, and neurologic absent.  AR 555.  On May 2, 2017, Plaintiff had marked swelling and edema and erythema to the second toe right foot with open wound/ulceration and neuro was absent in the feet.  The ulceration was debrided, and Plaintiff was provided medication.  AR 554.  On May 3, 2017, physical examination revealed that Plaintiff was able to exercise, she had a normal gait and only mild, bilateral lower extremity edema.  AR 564-65.

On May 24, 2017, Plaintiff had an ulceration on the distal tip of her second toe, was placed on antibiotics and told to return to in a week and to complete labs.  AR 553.  She did not complete the labs or return to the clinic until August 2017.  AR 552.  In August 2017, Plaintiff had minimal pain to the second digit right foot.  She had a full-thickness ulceration that was very swollen.  She had been prescribed Keflex in the ER but had been noncompliant.  AR 552.  In September 2017, an MRI of her second toe on her right foot was negative for osteomyelitis.  AR 550.  She grew out MRSA with a culture on the right second toe.  Her toe was cleansed, and she was provided IV antibiotics and a prescription.  AR 551.

In March 2018, Plaintiff sought treatment for swelling and pain of her right second toe.  Her treatment provider authorized routine palliative care and conservative treatment of her right second toe.  AR 549.  In May 2018, Plaintiff continued to have swelling in her right second digit and was authorized for a hammertoe tenotomy although there is no indication in the record that she underwent a tenotomy.  AR 547.  She continued to receive routine pedal care for management of her symptomology and conservative treatment.  AR 547-48.  On July 11, 2018, Plaintiff was negative for

lower extremity edema.  AR 561.  She had no discoloration or ulceration of the lower extremities.  AR 558.

Although Plaintiff had varying foot and toe issues in 2017 and 2018, the ALJ accounted for those issues in the RFC limitations, including a limitation to standing and walking for a total of two hours in an eight-hour workday, occasional postural activities, with the exclusion of climbing ladders, ropes, or scaffolds, and avoiding even moderate exposure to hazards.  AR 22.  Moreover, as the ALJ noted, the record reflects that Plaintiff's condition improved with medications and conservative treatment.  AR 25 ("podiatry clinic treatment notes reflect continued swelling in her feet and improvement in other symptoms with treatment"); 26-27 ("The claimant's conservative treatment . . and the improvement in her condition with treatment and medication indicates her impairments are not as significant as alleged"); 29 ("Conservative treatment has been taken . . . . When the claimant is compliant with recommended treatment, the medical records show that her condition improves.").

The ALJ also discounted PA Harwick's opinion to the extent it contradicted Plaintiff's testimony and daily activities.  AR 29.  Inconsistencies between an "other source" opinion and a claimant's daily activities is a germane reason for the ALJ to discount that opinion.  *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam); *see also Bourcier,* 856 Fed.App'x 687 at 690 (concluding that ALJ permissibly found other source opinion inconsistent with claimant's reported activities).   In this instance, the ALJ noted specific discrepancies between PA Harwick's opinion that Plaintiff could walk less than a block at a time (AR 543) and Plaintiff's report that she shops for groceries, uses public transportation, vacuums, sweeps and performs household chores (AR 312-13, 458, 467-68).  AR 29.  The ALJ also noted the inconsistency between PA Harwick's opinion that Plaintiff could only sit for twenty to thirty minutes at a time (AR 543) and Plaintiff's own testimony that she could sit for ninety minutes at a time (AR 53).  AR 29.

Additionally, the ALJ assigned only partial weight PA Harwick's opinion in favor of the opinion of the consultative examiner, Dr. Barbara Weiss.  AR 27.  The ALJ may reject the competent testimony of "other medical sources" if it is contradicted by another medical specialist. *Molina*, 674 F.3d at 1111; *see also Mendoza v. Colvin*, No. 1:13–cv–01213–SKO, 2015 WL 1320093, at *22 (E.D. Cal. Mar. 24, 2015) (finding that ALJ properly rejected other-source opinion directly contradicted by

consultative examiner's opinion, which was "an acceptable medical source entitled to more weight").

Dr. Weiss conducted a physical examination of Plaintiff on May 1, 2016.  AR 458.  In contrast to PA

Harwick's opinion, Dr. Weiss opined that Plaintiff had no limitation in her ability sit and could stand

and walk up to four hours in an eight-hour workday.  Dr. Weiss further opined that Plaintiff could

lift/push/pull 20 pounds occasionally and 10 pounds frequently.  She could occasionally climb steps

and stairs and occasionally stoop, crouch, kneel or crawl, but never climb ladders, scaffolds, or ropes.

Plaintiff could frequently reach overhead and forward and had no limitations in handling, fingering,

and feeling.  She was limited from working at heights, working around heavy machinery, working

around extremes of temperature and chemicals, and working around dust, fumes, and gases.  AR 463.

The ALJ assigned Dr. Weiss' opinion great weight.  AR 27.  Plaintiff has not challenged the ALJ's

evaluation of Dr. Weiss' opinion, instead incongruously citing Dr. Weiss' findings in support of her

contention that the ALJ improperly discounted PA Harwick's opinion.  (Doc. 17 at 12.).  The Court

finds that the ALJ permissibly discounted PA Harwick's opinion in favor of the contrasting opinion of

Dr. Weiss, an acceptable medical source.

Based on the above the Court concludes that the ALJ provided multiple germane reasons for
discounting PA Harwick's opinion.

## B.  Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ improperly rejected Plaintiff's symptom testimony.   (Doc. 17

at 16.)  In particular, Plaintiff argues that the ALJ failed to articulate a single clear and convincing

reason supported by substantial evidence for rejecting Plaintiff's symptom testimony.  (*Id.* at 22.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a

two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc.

Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical

evidence of her impairment that could reasonably be expected to produce some degree of the symptom

or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no

evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her

symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms.  AR 23.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.  First, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her diabetes, neuropathy, retinopathy and hammertoes were inconsistent with her relatively normal physical examinations (AR 23-24), discussed above, and not supported by objective medical evidence.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Second, the ALJ noted that Plaintiff's symptoms and pain improved with conservative treatment and medication compliance.  AR 24.  Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Clayton o/b/o M.M.M. v. Saul*, No. 2:18-CV-3097 AC, 2020 WL 732932, at *5 (E.D. Cal. Feb. 13, 2020), *appeal dismissed sub nom. Clayton v. Saul*, No. 20-15696, 2020 WL 4018635 (9th Cir. May 27, 2020).  The record reflects that by July 2018, Plaintiff's diabetes was stable and reasonably well-controlled.  AR 25, 558.  Plaintiff's podiatry-related impairments also were generally treated effectively.  *See* AR 547-49, 553, 554, 564-65, 573. Further, an ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment).  As discussed above, the record continually reflects that Plaintiff's hammertoes and neuropathy were generally treated with conservative and palliative care.  She reported taking medication for her diabetes, depression, and neuropathy.  AR 26, 416.  The ALJ also noted Plaintiff's admission that she is not taking any pain medication.  AR 26, 54.

Third, the ALJ found that Plaintiff's activities of daily living were inconsistent with her alleged limitations and allegation of disability.  AR 26.  An ALJ may properly discount a claimant's subjective

complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina*, 674 F.3d at 1112–13 (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").  The ALJ cited Plaintiff's functional report indicating that she provides for her own personal care with minimal assistance, helps care for her pet dogs, prepares meals, shops, uses public transportation and pays bills. 311-13.  During her consultative evaluations, she reported that she was able to bathe and dress herself, prepare meals, wash dishes, shop, drive, vacuum, sweep, and mop.  AR 26, 458-59, 467-68.  During the hearing, she also reported performing chores in the morning and shopping with her daughter.  AR 26, 51, 60.

Plaintiff argues that the ALJ failed to adequately consider the context of her statements concerning her activities of daily living.  (Doc. 17 at 20.)  However, even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Fourth, the ALJ discounted Plaintiff's subjective complaints because she was not entirely compliant with recommended treatment and medication.  AR 26.  An ALJ may properly consider a claimant's failure to follow a prescribed course of treatment in evaluating subjective symptom testimony.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (noting ALJ may consider unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment in evaluation of subjective complaints); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").  Despite complaining that she was unable to work because of problems with her foot, Plaintiff's records reflect that she was noncompliant with medication and treatment recommendations related to her feet on more than one occasion.  For instance, in May 2017, Plaintiff was placed on antibiotics and told to return in a week and to complete labs, but she did not complete the labs or return to the clinic until August 2017.  AR 552.  In August 2017, she had been prescribed Keflex in the ER for her right foot, but she had been noncompliant.  AR 552.  In May 2018, Plaintiff was authorized for a hammertoe tenotomy although there is no indication in the record that she

13

underwent a tenotomy.  AR 547.  Plaintiff argues that in connection with her missed appointments, the ALJ failed to consider mental health records indicating that she has "difficulty making doctor visits due to her moods and lack of finances."  AR 625.  However, the Court finds no correlation with Plaintiff failure to comply with treatment recommendations for her feet, such as taking prescribed medications, nor is there any indication that Plaintiff's noncompliance or failure to obtain treatment was due to her moods or lack of finances.

Additionally, the ALJ discounted Plaintiff's subjective complaints based on her sporadic work history, finding that it raised a question as to whether her continuing unemployment was actually due to medical impairments.  AR 27.  An ALJ may consider work history when evaluating a claimant's credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Sherman v. Colvin*, 582 Fed.App'x 745, 747-48 (9th Cir. 2014) (ALJ's finding of sporadic work history specific, clear and convincing reasons for rejecting plaintiff's testimony).  Here, the ALJ noted Plaintiff's only minimal annual earnings in 2001, 2002, 2003, 2004, 2006, 2007 and 2008.  AR 27, 258.

The Court therefore finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error.  Even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d at 1197.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Darlene Raquel Johns.

IT IS SO ORDERED.

Dated:   **September 13, 2021**          /s/ *Barbara A. McAuliffe*
                              UNITED STATES MAGISTRATE JUDGE